**MONTGOMERY WARD & CO., Inc., v.
NATIONAL LABOR RELATIONS
BOARD.**

No. 490.

Circuit Court of Appeals, Eighth Circuit.

Dec. 2, 1940.

Stuart S. Ball, of Chicago, Ill. (John A. Barr and R. F. Walker Smith, both of Chicago, Ill., on the brief), for petitioner.

.Allen Heald, of Washington, D. C., (Charles Fahy, Gen. Counsel, Robert B. Watts, Associate Gen. Counsel, Laurence A. Knapp, Asst. Gen. Counsel, and Joseph Friedman and Thomas F.· Wilson, all of Washington, D. C., on the brief), for National Labor Relations Board.

Before SANBORN and THOMAS, Circuit Judges, and DEWEY, District Judge.

SANBORN, Circuit Judge.

The petitioner, Montgomery Ward & Co., Inc., asks for the reversal of an order of the National Labor Relations Board, which, so far as now pertinent, requires the petitioner to cease and desist from "either directly or indirectly engaging in any manner of espionage or surveillance, or engaging the services of any agency or individuals for the purpose of interfering with, restraining, or coercing its employees in the exercise of the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, or to engage in concerted activities for the purposes of collective bargaining and other mutual aid or protection; * * *"; and requires the petitioner (respondent before the Board) to take the following affirmative action: "Notify in writing all its present and any future under-cover operatives at the St. Paul house that they shall not spy upon the respondent's [petitioner's] employees in their exercise of the right to self-organization, to form, join, or assist labor organizations of their own choosing, and to engage in concerted activities for the purposes of collective bargaining and other mutual aid or protection, and that they shall not report to the respondent [petitioner] regarding such exercise by the respondent's [petitioner's] employees; * * *." The Board asks for the enforcement of this order.

The Board, in 1938, upon charges filed by Warehouse Employees' Union No. 20,297, affiliated with the A. F. of L., issued its complaint, which, as finally amended, alleged that petitioner, following a strike at its St. Paul house, had refused to reinstate fifteen employees because they had struck and had engaged in concerted activities for the purpose of collective bargaining, and that the petitioner had thus discriminated in regard to their hire and tenure of employment, in violation of § 8(3) of the National Labor Relations Act.[1] 49 Stat. 449, 452;

29 U.S.C.A. § 158 (3). The complaint further alleged that petitioner had maintained a system of espionage and had advised and warned its employees to refrain from joining the union, and thus had violated § 8(1) of the Act.[2] The petitioner, in its answer, conceded that the Board had jurisdiction, but denied having committed any unfair labor practices. A hearing was had before a Trial Examiner designated by the Board, at St. Paul, Minnesota. The Trial Examiner subsequently recommended that petitioner be ordered to cease and desist from interfering with the rights of its employees guaranteed by § 7 of the Act, 29 U.S.C.A. § 157;[3] and, further, that it be required to reinstate, with back pay, three of fifteen employees named in the complaint, and that the complaint with respect to the other twelve be dismissed. The petitioner filed exceptions to this report, and, after a hearing, the Board decided that petitioner had interfered with, restrained, and coerced its employees in the exercise of the rights guaranteed by § 7 of the Act, thus violating § 8(1) of the Act, but that petitioner had not discriminated in regard to the hire and tenure of employment of any of the fifteen employees named in the complaint, and had not violated § 8(3) of the Act. In addition to the order requiring the petitioner to cease and desist from violating § 8(1) of the Act, the Board ordered it to place the fifteen employees named in the complaint on a preferential list, to be offered employment when available, and to reinstate them to their former or equivalent positions before it hired others therefor. The complaint, in so far as it alleged that petitioner had discriminated against the fifteen employees named in the complaint, was dismissed.

In this court the Board, in its response to the petition for the review of its order, asserted the validity of the entire order, and requested its enforcement, but in its brief it has requested the elimination from the order of all reference to placing the fifteen

---

[1] "Sec. 8. [§ 158]. It shall be an unfair labor practice for an employer—

* * * * * * *

"(3) By discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: * * *."

[2] "Sec. 8 [§ 158]. It shall be an unfair labor practice for an employer—

"(1) To interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7 [157 of this title]"

[3] "Sec. 7 [§ 157]. Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection."

named employees upon a preferential list. Only so much of the order as relates to the alleged violation of § 8(1) of the Act, through petitioner's use of a system of espionage, need be discussed.

The facts out of which this controversy arises are not seriously in dispute. It is the inferences, drawn by the Board from the facts, that the petitioner challenges.

The petitioner is an Illinois corporation engaged in merchandising, with its main office and place of business in Chicago. It owns and operates a large retail and mail order house or establishment in St. Paul, Minnesota. For a long time the petitioner has maintained a system of espionage or surveillance of its employees, which has been primarily used for obtaining information relative to matters in which it has a direct and proper interest, such as the honesty, moral character, and efficiency of the large number of employees who work in its establishment at St. Paul. These matters were not in any way related to the rights of its employees guaranteed by § 7 of the National Labor Relations Act. In 1936, 1937 and 1938 the system was utilized by the petitioner to secure information as to the attitude of its employees toward unionization and with respect to union activities; and it was this use of the system which caused the filing of charges by the union with the Board that petitioner had interfered with the rights of its employees and thus violated § 8(1) of the Act.

The evidence disclosed that the head of petitioner's espionage or secret service system at St. Paul was the chief of petitioner's store police. His operatives were secured from among the regular employees of petitioner, who received, as their compensation for this special service, either extra pay or promises of an increase in pay or of promotion. Confidential instructions were given to the operatives, both verbal and in writing, by the chief of the system. They were directed to report thefts and irregularities of fellow employees which required immediate attention to the Personnel Director of petitioner, or, in case of necessity, to the chief. At the end of each week, each operative was required to mail a confidential report, containing matters of interest, to the chief at his residence address, or, in case of his absence, to the residence address of the Personnel Director. The operatives were instructed to report fairly and impartially upon both the bad and the good qualities of their fellow employees. The reports were to show "the true attitude of employees regarding their work, efficiency, attitude towards their immediate superiors, the management or company in general, employees' outstanding qualities or dishonest or careless tendencies." The operatives were advised that all information furnished was to be held in strictest confidence and referred only to the management.

In June, 1936, the operatives received from their chief a letter which contained the following: "The management is very much interested in knowing the full details of the present labor situation throughout the house, namely, what the attitude is of the persons who have recently joined Local 120, what benefits they expect to derive from it, what their general attitude is towards this movement, also if there is any talk of organizing the house as a whole. * * * Please destroy this letter as soon as read."

In December, 1936, after an affiliated union had initiated the unionization of petitioner's employees, the chief wrote his operatives as follows:

"Labor organizers are again at work among Ward employees. As usual, they are using the Government as an excuse to encourage organization among employees and to directly profit themselves.

"A number of Ward employees have received a letter soliciting membership in The National Union of Mail Order Employees. This letter is signed 'The Committee', although a Saint Paul attorney, John T. O'Donnell at 519 New York Building, is named in the letter.

"This is the way many organizations start and many times in the end cause trouble between companies and employees, with the result that both lose. You know that your company is anxious to do what is fair to its employees and, therefore, please be sure to report as soon as possible any discussions you hear of this new effort to cause trouble within the Ward organization."

Organization of the union in petitioner's establishment in St. Paul was completed in the early spring of 1937. In April of that year the chief told one of petitioner's employees, whom he was asking to join his force of operatives, "that there was a lot of talk now about the union and they wanted to know more about this because the union was, well, bad business for employees

as well as the company, that it would cause trouble between the employees and the company and they wanted to have everything peaceable, did not want to have any trouble, * * *." The operatives were requested to keep in touch with the labor situation not only on petitioner's premises, but also outside. At least two operatives were asked to attend union meetings and to report upon them. One operative was asked to join the union at petitioner's expense, and the chief, on one occasion, apparently when in high spirits, publicly boasted that he had undercover agents in the union who kept him in touch with everything the union was doing. In December, 1937, the union called a strike of petitioner's St. Paul employees, which extended through the holidays, and was not successful. There is no direct evidence that the petitioner actually used the information secured through its espionage system to influence or coerce any of its employees with respect to joining or not joining a union or with respect to wages or conditions of employment.

The petitioner's position is that proof of the use by an employer of a system of espionage to acquire information as to the union affiliations and union activities of his employees is not, standing alone, sufficient to establish a violation of § 8(1) of the Act, and that it only becomes sufficient when there is other evidence to show that the system actually constituted an interference with the rights of the employees guaranteed by § 7 of the Act.

The position of the Board is that proof of the use of such a system for such a purpose by an employer is in and of itself sufficient evidence to support a finding of a violation of § 8(1) of the Act, but that, even if it is not, other evidence in this case sustains the finding of the Board that the petitioner was guilty of a violation of that section.

█ There was evidence in the record from which the Board might have found that the responsible officers of the petitioner did not actually use the information secured through the espionage system to interfere with the rights of its employees guaranteed by the act; that in 1938 the petitioner discarded the system in so far as it touched upon union affiliations and activities of its employees, and that there was no likelihood of a resumption of the use of the system for procuring information about such matters. However, we think that the

Board was not compelled to find noninterference with the employees' rights, and was not precluded from finding that the use of the system which the Board found objectionable might recur. Compare Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 230, 59 S.Ct. 206, 83 L.Ed. 126.

█ For the purposes of this opinion, we shall assume, without deciding, that proof of the maintenance by an employer of a system of espionage, one of the purposes of which is to secure information relative to the attitude of his employees toward self-organization, joining a union, and kindred matters, is not alone sufficient to justify a finding that § 8(1) of the Act has been violated by him. The Board in its decision expressed the opinion that such proof was, alone, sufficient, but if its finding that petitioner violated § 8(1) is justified by the evidence as a whole, we are satisfied that the order of the Board should be affirmed.

In addition to proof of the existence of the espionage system and its use, there is evidence, as already pointed out, that the chief of the system had a bias against the union, which he communicated to some of petitioner's employees, and certainly to those whom he engaged as operatives. The statements of the chief, before referred to, tended to characterize the system, in so far as it was used to gather information relative to the union affiliations and activities of petitioner's employees, as one antagonistic to unionization. Moreover, from the evidence that the chief of the system had openly stated that he had operatives in the union, the Board could reasonably infer that the employees could hardly be ignorant of the existence of the system and of the interest of the petitioner in ascertaining their labor affiliations and activities. It is scarcely conceivable, we think, that the statements of the chief of the system and the knowledge of the employees of the use of the system to spy upon their union activities could have been without some effect upon their freedom in the exercise of the rights guaranteed by § 7 of the Act.

The petitioner contends that the statements of the chief antagonistic to the unionization of the employees may not properly be charged against it, but should be considered an expression of his personal views. He was, however, the supervisor of the system for petitioner, and it is not unreasonable to suppose that, as such, he

knew what information was desired by the petitioner and the purpose for which it was desired. It was his duty to instruct the employees who were acting as his operatives. His relation to the petitioner and the nature of his employment and duties were such that we think the Board was justified in concluding that his statements with respect to the unionization of the employees were attributable to petitioner. The distinction between statements made by the head of an espionage system which are germane to the business entrusted to him by the employer and the statements made by a supervisory employee working on a match machine, which were considered by this court in Cupples Co. Manufacturers v. National Labor Relations Board, 106 F.2d 100, 114–116, is too obvious to require discussion.

The suggestion by petitioner that the order of the Board will prevent petitioner from using its system of espionage for the purpose of detecting thefts and irregularities of its employees, is clearly without merit. The order of the Board merely prevents the petitioner from using the system for the purpose of interfering with, restraining or coercing its employees in respect to the rights guaranteed by § 7 of the Act.

Our conclusion is that, under the evidence, the question of whether the petitioner had violated § 8(1) of the Act is not a question of law for this court to decide, but was a question of fact for the Board to determine, and that its finding is conclusive upon the petitioner and upon this court. See and compare: National Labor Relations Board v. Fruehauf Trailer Co., 301 U.S. 49, 54, 57 S.Ct. 642, 630, 81 L.Ed. 918, 108 A.L.R. 1352; National Labor Relations Board v. Friedman-Harry Marks Clothing Co., 301 U.S. 58, 75, 57 S.Ct. 645, 630, 81 L.Ed. 921, 108 A.L.R. 1352; Consolidated Edison Co. v. National Labor Relations Board, 305 U.S. 197, 230, 59 S.Ct. 206, 83 L.Ed. 126; Fort Wayne Corrugated Paper Co. v. National Labor Relations Board, 7 Cir., 111 F.2d 869, 874; Montgomery Ward & Co., Inc. v. National Labor Relations Board, 7 Cir., 107 F.2d 555, 558, 559; Link-Belt Co. v. National Labor Relations Board, 7 Cir., 110 F.2d 506, 511.

The order of the Board will, as requested by it, be modified by eliminating therefrom all reference to placing the fifteen employees named in its order on a preferential list. As so modified, the enforcement of the order is directed.

